IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE H. WAGNER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 11-762 |
| | ) | District Judge Joy Flowers Conti |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| DISTRICT ATTORNEY OF | ) | |
| ALLEGHENY COUNTY, | ) | |
| PENNSYLVANIA, | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Dismiss (ECF No. 10) be granted and that the Complaint be dismissed, without leave to amend.

### II. REPORT

On June 9, 2011, Plaintiff, Lee H. Wagner, a prisoner presently confined at the State Correctional Institution at Cresson, Pennsylvania, commenced the present action against the District Attorney of Allegheny County. The case was filed in this court and was referred to then Magistrate Judge Cathy Bissoon for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and the Local Rules of Court for Magistrate Judges. On June 20, 2011, Magistrate Judge Bissoon granted Plaintiff's Motion to Proceed *In Forma Pauperis* (ECF No. 4) and the Complaint was served. On September 6, 2011, Defendant filed a Motion to Dismiss (ECF No. 10) and Brief in support thereof (ECF No. 11). Plaintiff filed responses to the Motion on September 19, 2011 (ECF No. 15) and November 29, 2011 (ECF No. 17).

1

On October 27, 2011, this case was assigned to me upon the elevation of Judge Bissoon to the District Court. For the reasons set forth below, the Complaint fails to state a claim upon which relief may be granted and it would be futile to allow Plaintiff to file an amended complaint in this matter.

## A. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp and providing further guidance on the standard set forth therein).

2

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).

In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the new authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims.

3

Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b). Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and Defendant is an employee of a governmental entity. Thus, his Complaint must be reviewed under the authority set forth above. In reviewing complaints under these statutory provisions, a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## B. Plaintiff's Allegations and Relevant Facts of Public Record

On August 9, 1996, Plaintiff met Chelsea Whitney, a woman with whom he had been conversing by telephone for the previous two weeks, at Station Square in the City of Pittsburgh. After having dinner, Plaintiff went to Ms. Whitney's apartment in Mount Washington. At the apartment, the parties engaged in kissing, which became violent when Plaintiff ignored Whitney's requests that he stop. Whitney testified that Plaintiff pinned her to the sofa, ripped off her pantyhose, and touched her vagina. After doing so, he left and Whitney reported the incident to the police two days later. Subsequently, Plaintiff was charged with Aggravated Indecent Assault, Indecent Assault, and Simple Assault.

On January 28, 1997, the Defendant appeared before the Court for a jury trial. At the conclusion of the trial on the same day, the jury found Plaintiff guilty of Aggravated Indecent

4

Assault and Indecent Assault. On May 7, 1997, after a finding by the Court that he was a sexually violent predator, Plaintiff was sentenced, pursuant to Megan's law, to serve a period of incarceration of five years to life. A direct appeal was filed. In an Order dated September 25, 1998, and clarified in an Order dated September 30, 1998, the Superior Court remanded the matter for purposes of an evidentiary hearing on the issue of trial counsel's ineffective assistance. The hearing was held on December 16, 1998. At that time, the Commonwealth conceded that Megan's law had been declared unconstitutional and, therefore, Plaintiff should be re-sentenced. As such, Plaintiff was re-sentenced to serve a period of incarceration of not less than five years nor more than ten years. A second appeal was filed on January 7, 1998. After the filing of Briefs, the Superior Court affirmed the judgment of sentence on July 21, 2000.

On August 3, 2000, Plaintiff filed a *pro se* Petition under the Post Conviction Relief Act and counsel was appointed. Following a hearing, on April 4, 2002, an Order of Court was issued dismissing the Petition. An appeal was filed on April 16, 2002. After the filing of Briefs, the Superior Court affirmed the PCRA Court on July 2, 2003. A subsequent Petition for Allowance of Appeal was denied by the Superior Court on December 16, 2003.

On January 27, 2006, Plaintiff filed a *pro se* Petition for Post Conviction Collateral Relief requesting DNA testing of the pantyhose under 42 Pa. Cons. Stat. § 9543.1. Counsel was appointed who filed a Motion for Post-Conviction DNA Testing on May 18, 2006. On November 13, 2006, the Court issued an Order dismissing the Motion without a hearing. Plaintiff appealed and the Superior Court of Pennsylvania affirmed the PCRA Court in a Memorandum Opinion dated December 26, 2007. Plaintiff filed a timely counseled petition for allowance of appeal, which was denied by the Supreme Court of Pennsylvania on May 29, 2008.

On July 17, 2008, Wagner filed a third *pro se* PCRA petition, alleging the Commonwealth withheld a statement made by the victim to a Pittsburgh Action Against Rape representative and that this failure violated his constitutional rights. On September 18, 2008, the PCRA court dismissed the petition without a hearing. Wagner did not file an appeal. In the meantime, on July 24, 2008, Plaintiff filed a Petition for Writ of Habeas Corpus in this Court at Civil No. 3:08-186. That Petition was dismissed as untimely on December 31, 2009.

On January 27, 2011, Wagner filed a fourth *pro se* PCRA petition and a motion for DNA testing. On March 21, 2011, the PCRA dismissed the PCRA petition as previously litigated and time-barred. Plaintiff appealed and the Superior Court of Pennsylvania affirmed the PCRA Court in a Memorandum Opinion dated February 9, 2012 agreeing that the claims were previously litigated and holding that Plaintiff was estopped from reasserting his claim under the law of the case doctrine.

Plaintiff filed the instant action on June 6, 2011. In this action, he claims that his civil rights were violated by the state court decisions denying his requests for DNA testing. For the reasons that follow, this Court does not have subject matter jurisdiction to review his claims. In the alternative, Plaintiff's claims are barred by the applicable limitations period. Finally, even assuming Plaintiff's claims are not time-barred, he has failed to show that he is entitled to relief under 42 U.S.C. § 1983.

## C. Rooker-Feldman Doctrine

Although not raised by Defendant in its Motion to Dismiss, this Court lacks subject matter jurisdiction over Plaintiff's claims under the Rooker-Feldman Doctrine. This doctrine is predicated on the principles of comity and federalism and originated from two Supreme Court

6

opinions, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Specifically, the Rooker-Feldman doctrine holds that a United States District Court has no subject matter jurisdiction to review final judgments of a state court because only the Supreme Court has jurisdiction to review state judgments under 28 U.S.C. § 1257. Feldman, 460 U.S. at 482; Rooker, 263 U.S. at 416. *Accord* Parkview Assocs. P'ship v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000) ("The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision."). The Rooker-Feldman doctrine precludes a federal action if the relief requested in the federal action effectively would reverse the state decision or void its ruling. FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996). Moreover, the Rooker-Feldman doctrine applies to the decisions of lower state courts. In re General Motors Corp. Pick Up Truck Fuel Tank Prod's Liability Litigation, 134 F.3d 133, 143 (3d Cir. 1998).

In Exxon Mobil Corp. v. Saudi Basic Industries Corporation, 544 U.S. 280, 284 (2005), the Supreme Court explained that the Rooker-Feldman Doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." Thus, Rooker-Feldman applies when: 1) the federal plaintiff lost in state court; 2) the plaintiff complains of injuries caused by the state-court judgments; 3) those judgments were rendered before the federal suit was filed; and 4) the plaintiff is inviting the district court to review and reject the state

7

judgments. *Accord* Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010).

All four of those factors apply here. First, Plaintiff lost in state court when his motion for DNA testing was denied by the state courts. Second, Plaintiff complains of injuries caused by the state-court judgments. Three, the judgments of the state court were rendered before the federal suit was filed on June 9, 2011. Four, Plaintiff is inviting the district court to review and reject the state judgments. Plaintiff is essentially asking this Court to conduct a *de novo* review of the state court proceeding related to request for DNA testing. In order to grant relief on Plaintiff's claim, this court would be required to find that the state court judgments were invalid and/or entered in violation of law. Plaintiff cannot do this under the guise of a civil rights claim.[1]

Because such a ruling would render the state court judgments ineffectual, this court does not have subject matter jurisdiction over plaintiff's claim under the Rooker-Feldman Doctrine. *See* Burgos v. McEwan, Civil Action No. 10-3766, 2011 WL 222498 (3d Cir. Jan. 25, 2011) (*sua sponte* dismissing complaint as clearly barred by the Rooker-Feldman doctrine); Van Tassel v. Lawrence County Domestic Relations Sections, 390 Fed. App'x 201, 203 (3d Cir. 2010) (affirming District Court's *sua sponte* dismissal of complaint under Rooker-Feldman); White v. Rabner, 349 Fed. App'x 681, 682 (3d Cir. 2009) (same); Burrows v. Beard, Civil No. 09-314, 2010 WL 608323 (W.D. Pa. Feb. 17, 2010) (dismissing complaint attacking suppression court judgment under Rooker-Feldman as legally frivolous in accordance with 28 U.S.C. § 1915(e)).

In his various pleadings, Plaintiff relies on the recent Supreme Court decision in Skinner v. Switzer, ___ U.S. ___, 131 S.Ct. 1289 (2011), in support of his claim for relief. In Skinner, a

state prisoner filed a federal civil rights action under § 1983, naming the district attorney as the defendant and alleging that the defendant had custody of untested biological evidence Skinner wanted to have tested for DNA purposes. The district court dismissed the complaint for failure to state a claim and reasoned that Skinner needed to pursue any postconviction requests for DNA evidence in a habeas corpus action. The United States Court of Appeals for the Fifth Circuit affirmed. Reversing, the Supreme Court held that Skinner's complaint stated a cognizable claim for relief and that he could proceed in a § 1983 action against the defendant where he challenged the constitutionality of a state statute on its face. *Id.* at 1298. In so ruling, the Court specifically addressed the applicability of the Rooker-Feldman doctrine and reiterated that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Id.* Skinner did not challenge the adverse decisions themselves; instead, he targeted as unconstitutional the Texas statute they authoritatively construed. Thus, the Court held that Rooker-Feldman did not remove subject-matter jurisdiction over Skinner's federal suit.

Given the allegations of Plaintiff's complaint, the instant case does not fall within the parameters set forth in Skinner. Plaintiff is not challenging through this civil rights action the constitutionality or adequacy of the Pennsylvania DNA testing procedures. Rather, he claims that Defendant, as well as the state courts he has sought to obtain relief from, have refused, in violation of his constitutional rights, to provide him with the DNA evidence he seeks. In this regard, Plaintiff asserts a challenge to, or seeks review of, the state court rulings denying his requests for DNA evidence. Thus, Plaintiff is precluded from raising such claims in this federal

---

¹ The Court notes that the Rooker-Feldman doctrine does not apply to habeas corpus

9

civil rights action under the Rooker-Feldman doctrine. *Accord* Alvarez v. Attorney General for Fla., Civil No. 11-10699, 2012 WL 1579489, 6 (11th Cir. May 08, 2012) ("Alvarez's as-applied procedural due process challenge boils down to a claim that the state court judgment itself caused him constitutional injury by arbitrarily denying him access to the physical evidence he seeks under Florida's concededly constitutional procedures. It is abundantly clear that success on this claim would effectively nullify the state court's judgment and that the claim would succeed only to the extent that the state court wrongly decided the issues."); Jackson v. Hannen, Civil No. 11-3312, 2012 WL 555530 (D. Colo. Feb. 21, 2012); Moncier v. Jones, 803 F.Supp.2d 815, 832 (E.D. Tenn. 2011); Alford v. Shasta County Super. Ct., Civil No. 11-2583, 2012 WL 671941 (E.D. Cal. Feb.29, 2012) (plaintiff's complaint fails to state a cognizable claim because he does not challenge the constitutionality of California's DNA statute and instead challenges the state court rulings against him).[2]

To the extent that the Court does have subject matter jurisdiction, his claims are discussed in more detail below.

## D. Limitations Period for Actions under 42 U.S.C. § 1983

Plaintiff seeks recovery against Defendant under 42 U.S.C. § 1983. The limitations period for civil actions brought under 42 U.S.C. § 1983 is determined by state law. Under Pennsylvania law, the applicable limitations period for civil rights actions asserted under 42 U.S.C. § 1983 is two years. See 42 Pa. Cons. Stat. § 5524. The date when a civil rights action

_____

proceedings.
[2] Dismissal on the basis of Rooker-Feldman is recognized as a situation where amendment of the Plaintiff's complaint would be futile. *See* Reisinger v. Luzerne County, 712 F.Supp.2d 332, 352 (M.D. Pa. 2010) (citing Watkins v. Proulx, 235 Fed. App'x 678, 679 (9th Cir. 2007)). Thus,

accrues (begins to run) is a matter of federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007). A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the Defendant. *See* Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period); Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).

Here, Plaintiff is asserting that his civil rights were violated by the Commonwealth's post-conviction procedures in denying his PCRA Petition. Almost every Court that has considered this issue has ruled that the statute of limitations on section 1983 claims based on denial of right to access modern DNA testing begins to run at the end of the state litigation in which an inmate unsuccessfully sought access to such testing. *See, e.g.*, Van Poyck v. McCollum, 646 F.3d 865 (11th Cir. 2011) (holding that statute of limitations on section 1983 claim based on denial of right to access modern DNA testing did not begin when such DNA testing became widely but only at end of state litigation in which inmate unsuccessfully sought access to such testing); Savory v. Lyons, 469 F.3d 667 (7th Cir. 2006) (holding that state prisoner's § 1983 claim seeking post-conviction access to physical evidence for the purpose of DNA testing accrued, for limitations purposes, on the date that the state court denied his request for DNA testing under state law; on that date, prisoner became aware of his alleged injury); Mixon v. Sedita, 757 F.Supp.2d 229, 231 (W.D.N.Y. 2010); Wade v. Brady, 612 F.Supp.2d 90

Plaintiff will not be provided the opportunity to amend his complaint. *Cf.* Haagensen v. Supreme Court of Penn., 390 Fed. App'x. 94, 98 (3d Cir. 2010).

(D. Mass. 2009); Moore v. Lockyer, Civil No. 04-1952, 2005 WL 2334350, at \*1 (N.D. Cal. Sept. 23, 2005).

Plaintiff's Complaint is signed and dated June 6, 2011. Due to the two-year limitations period, Plaintiff cannot impose liability against Defendants under 42 U.S.C. § 1983 based on events that occurred prior to June 6, 2009. Plaintiff is asserting that his civil rights were violated by the Commonwealth's post-conviction procedures in denying his second PCRA Petition. The PCRA Court denied his second PCRA Petition on November 13, 2006. Plaintiff filed an appeal from the denial of his PCRA Petition with the Superior Court of Pennsylvania. The Superior Court affirmed the judgment of the PCRA Court on December 26, 2007. Plaintiff filed a timely counseled petition for allowance of appeal, which was denied by the Supreme Court of Pennsylvania on May 29, 2008. Plaintiff had ninety days from that date to file for *certiorari, i.e.*, until August 27, 2008 to file for review in the United States Supreme Court. Accordingly, August 27, 2008 is the last possible date of the state litigation in which Plaintiff sought access to DNA testing. Even after adding two years from that date, *i.e.*, August 27, 2010, Plaintiff's Complaint filed on June 6, 2011, is untimely. *Accord* Savory v. Lyons, 469 F.3d 667 (7th Cir. 2006).

Moreover, Plaintiff cannot cure this defect through allowance of amendment of his complaint. Plaintiff attempts to circumvent the limitations period by arguing that his claims did not accrue until the Supreme Court decided Skinner v. Switzer, ___ U.S. ___, 131 S.Ct. 1289 (2011). In that case, the Supreme Court held that a post-conviction claim for DNA testing may be pursued in a section 1983 action. This ruling, however, did not recognize any new constitutional right; it merely held that a claim for DNA testing could be brought in a section

1983 action. The majority of courts faced with this issue, including the Court of Appeals for the Third Circuit, already had so concluded. *See, e.g.* Grier v. Klem, 591 F.3d 672 (3d Cir. 2010) (holding that claim seeking DNA testing is cognizable under § 1983)[3]; McKithen v. Brown, 481 F.3d 89, 99 (2d Cir. 2007) (holding that claim seeking DNA testing is cognizable under § 1983); Savory v. Lyons, 469 F.3d 667, 669 (7th Cir. 2006) (same); Bradley v. Pryor, 305 F.3d 1287, 1290–1291 (11th Cir. 2002) (same). Accordingly, the 2011 Skinner case does not serve as a trigger for establishing any new limitations period. Consequently, Defendant's Motion to Dismiss the Complaint as time-barred should be granted. *Accord* Savory v. Lyons, 469 F.3d 667 (7th Cir. 2006) (holding that state prisoner's 1983 claim was time-barred as it was brought more than two years after the Supreme Court of Illinois upheld the order denying DNA testing of the evidence); Young v. Philadelphia County Dist. Attorney's Office, Civil No. 08-3463, 2009 WL 278968, 8 (E.D. Pa. Feb. 5, 2009) (rejecting argument that Plaintiff was unaware that Section 1983 might provide him recourse for a suit seeking DNA testing and holding that ignorance of the law is not a basis for tolling the statute of limitations). Accordingly, Plaintiff's claims are untimely and his case must be dismissed.

## E. Liability under 42 U.S.C. § 1983

---

[3] The Court notes that Grier was decided on January 12, 2010, which was well within Plaintiff's two-year limitations period. Moreover, Plaintiff is well aware of the Grier case. Yet, he offers no explanation as to why he waited almost 18 months after the Court of Appeals in Grier held that a plaintiff could file a civil suit under section 1983 to seek access to DNA testing before he filed the present action. In these circumstances, there is no basis upon which to find that Plaintiff's Complaint was timely filed.

13

In the alternative, Defendant's Motion to Dismiss should be granted based on failure to state a claim under 42 U.S.C. § 1983.[4] In this regard, to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff raises the following constitutional claims in his complaint: Procedural Due Process (Complaint ¶ 26-27); Substantive Due Process (Complaint ¶ 28); Access to Courts (Complaint ¶29); Eighth Amendment prohibition against Cruel And Unusual Punishment (Complaint ¶30); and Equal Protection (Complaint ¶31). For the reasons set forth below, Plaintiff has failed to state a violation of his constitutional rights with respect to the state's denial of his motions for post-conviction DNA testing. Accordingly, Defendant is entitled to judgment as a matter of law and his Motion to Dismiss should be granted.

1.    Due Process - Fourteenth Amendment

In several of his claims, Plaintiff asserts that Defendant violated his rights as protected by the Due Process Clause. Three kinds of section 1983 claims may be brought against the State under the Due Process Clause of the Fourteenth Amendment. Zinermon v. Burch, 494 U.S. 113, 125 (1990). First, a plaintiff may bring suit under section 1983 for a violation of his specific rights as guaranteed by the Bill of Rights. *Id.* Second, a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees

---

[4]    The court notes that Defendant's assertion of immunity does not apply in this action as

14

fair procedure for the deprivation of a constitutionally-protected interest in life, liberty or property. *Id.* Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Id.* (quoting Daniels v. Williams, 474 U.S. at 331)).

The discussion below reveals that Plaintiff has failed to state a claim upon which relief may be granted with respect to his specific rights as guaranteed in the Bill of Rights by the First and Eighth Amendments. Thus, the only way that he can succeed is if he can show a violation of his procedural or substantive due process rights. Two recent Supreme Court cases are relevant to these claims.

First, in Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52 (2009), the United States Supreme court held that the federal constitution does not provide a broad, freestanding right to access DNA evidence in the post-conviction setting thus concluding that there is no such substantive due process right. Specifically, the Court found that there was no long history of such a right of access to state evidence to perform DNA testing and the mere novelty of such a claim was reason enough to doubt that substantive due process sustains it. *Id.* (quoting Reno v. Flores, 507 U.S. 292, 303 (1993)).[5] The Supreme Court reiterated this holding in Skinner v. Switzer, —— U.S. ——,131 S.Ct. 1289, 1293 (2011) wherein it held that a post-conviction claim for DNA testing may be pursued in a civil rights action under 42 U.S.C. § 1983 and, therefore, habeas corpus was not an exclusive remedy. In so ruling, however, the Court

---

Plaintiff is not seeking money damages but, instead is seeking injunctive relief.

[5] *Accord* Grier v. Klem, 591 F.3d 672, 678 (3d Cir. 2010) (relying upon Osborne and acknowledging that plaintiff had no substantive due process right to access DNA evidence).

specifically noted that its decision in Osborne severely limited the federal action a state prisoner may bring for DNA testing: "Osborne rejected the extension of substantive due process to this area and left slim room for the prisoner to show that the governing state law denies him procedural due process." Skinner, 131 S.Ct. at 1293.

In order to obtain relief under the Due Process Clause in this action, Plaintiff must show a violation of his procedural due process rights. The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels, 474 U.S. at 339; Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010). Only upon finding that a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest. If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due. Due process is not a technical conception with a fixed content unrelated to time, place and circumstance. Gilbert v. Homar, 520 U.S. 924, 930 (1997). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

The Supreme Court's decision in Osborne controls my review. The Osborne Court recognized that a prisoner may retain a state-created liberty interest in demonstrating his innocence with new evidence under state law. Like the plaintiff in Osborne, I find that Wagner has an analogous state-created liberty interest in demonstrating his innocence in the context of post-conviction proceedings with appropriate evidence. Thus, the question is whether, as applied

16

to him, the state procedures for post-conviction DNA testing violated Wagner's procedural due

process rights. I must analyze this claim in light of the precepts set forth in Osborne.

A criminal defendant proved guilty after a fair trial does not have the same
liberty interests as a free man. At trial, the defendant is presumed innocent and
may demand that the government prove its case beyond reasonable doubt. But
once a defendant has been afforded a fair trial and convicted of the offense for
which he was charged, the presumption of innocence disappears. Given a valid
conviction, the criminal defendant has been constitutionally deprived of his
liberty.

The State accordingly has more flexibility in deciding what procedures are
needed in the context of postconviction relief. When a State chooses to offer help
to those seeking relief from convictions, due process does not dictate the exact
form such assistance must assume. Osborne's right to due process is not parallel
to a trial right, but rather must be analyzed in light of the fact that he has already
been found guilty at a fair trial, and has only a limited interest in postconviction
relief. Brady is the wrong framework.

Instead, the question is whether consideration of Osborne's claim within
the framework of the State's procedures for postconviction relief offends some
principle of justice so rooted in the traditions and conscience of our people as to
be ranked as fundamental, or transgresses any recognized principle of
fundamental fairness in operation. Federal courts may upset a State's
postconviction relief procedures only if they are fundamentally inadequate to
vindicate the substantive rights provided.

Osborne, 557 U.S. at 68-69 (internal quotations and citations omitted). The Osborne Court made

clear that it is the plaintiff's burden to demonstrate the inadequacy of the state-law procedures

available to him in state post-conviction relief. *Id.*, 557 U.S. at 71.

Pennsylvania's DNA testing procedures are governed by statute at 42 Pa. Cons. Stat. §

9543.1, which provides, in pertinent part, as follows.

§ 9543.1. Postconviction DNA testing

(a)   Motion.—

(1)  An individual convicted of a criminal offense in a court of this
Commonwealth and serving a term of imprisonment or awaiting execution

17

because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

* * *

(c) Requirements.—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1) (i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2)(i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and

* * *

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

18

(ii)   DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A)   the applicant's actual innocence of the offense for which the applicant was convicted;

\* \* \*

(d)   Order.—

(1)   Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2)   The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

\* \* \*

42 Pa. Cons. Stat. § 9543.1.

The statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel

did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. 42 Pa.C.S.A. § 9543.1(a)(2). Additionally, under section 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. *See* Commonwealth v. Williams, 35 A.3d 44, 49 (Pa. Super. 2011); Commonwealth v. Smith, 889 A.2d 582, 584 (Pa. Super.2005), *appeal denied*, 588 Pa. 769, 905 A.2d 500 (2006).

First, Wagner fails to make the difficult showing that the Pennsylvania DNA testing procedures as discussed above are facially invalid as they contain similar requirements and limitations imposed by other DNA-testing statutes, including the post-conviction statute upheld in Osborne. *See* Osborne, 129 S.Ct. at 2317-18. Specifically, both the Pennsylvania Statute and the statute upheld in Osborne require the claimant to make a sufficient showing that additional DNA testing could demonstrate his actual innocence. Moreover, the federal post-conviction DNA-access statute, 18 U.S.C. § 3600, which Osborne cites with approval, also requires the prisoner to assert that: 1) he is actually innocent; 2) the evidence sought has not been previously tested for DNA or that subsequent DNA testing techniques could produce a more definitive

20

result; and 3) the prisoner's identity was a disputed issue at trial. Accordingly, Wagner has failed to show that the Pennsylvania statute "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or "transgresses any recognized principle of fundamental fairness in operation." Osborne, 129 S.Ct. at 2321 (quotation marks omitted).

Wagner's "as-applied" challenge also fails. In this regard, in denying Plaintiff's first motion for DNA testing, the PCRA Court held as follows.

Here, the Defendant seeks to have the victim's pantyhose tested. This evidence was admitted at trial; thus, it existed prior to the Defendant's conviction. As DNA testing existed in Pennsylvania as early as 1992, the Defendant could have requested that the pantyhose be tested at the time of his trial. His failure to do so has resulted in waiver; and therefore, it is too late to request the testing at this juncture.

Moreover, even assuming that the Defendant could show that he is eligible for relief under § 9543.1 (a)(2), he has failed to satisfy both § 9543.1(c)(3)(i) and § 9543.1(c)(3)(ii), which he must do in order to establish a *prima facie* case for Post-Conviction DNA testing. First, subsection (i) requires the Defendant to present a *prima facie* showing that his "identity" or "participation" in the crime was at issue at trial. The Defendant does not challenge the issue of identity; rather, he challenges his "participation" in the crime, which, quite frankly, does not make any sense under the facts of this case. The Defendant admits that he was at the victim's residence and he further admits that he "participated" in sexual activities. As such, the Defendant's "participation" really was not at issue at trial; instead, the issue at trial was whether or not the victim's "participation" was voluntary and consensual. Thus, the Defendant has not made a *prima facie* showing that his "participation" was at issue. Second, subsection (ii) requires the Court to make a finding that the Defendant has made a *prima facie* showing that "the DNA testing of the specific evidence, assuming exculpatory results, would establish the applicant's actual innocence of the offense" prior to granting the request for testing. To establish "actual innocence", the evidence would have to be of such a quality and nature that it would demonstrate that the Defendant did not commit the crime. Bousley v. United States, 523 U.S. 614 (1998). In this case, although it is likely that the Defendant's DNA would not be found on the victim's pantyhose, the lack of such evidence would not establish his "actual innocence" with regard to indecently assaulting the victim, as the victim only testified that the Defendant forcibly kissed her, touched her breast, and inserted

his fingers in her vagina; she did not claim that the Defendant did anything that would cause his DNA to be found on her pantyhose. Accordingly, the Defendant has failed to make a *prima facie* showing that testing the victim's pantyhose would establish his "actual innocence".

For the foregoing reasons, as the Defendant has failed to meet his burden of proving that he is statutorily eligible for relief under § 9543.1 (a)(2) and he has further failed to make out a *prima facie* case under either § 9543.1(c)(3)(i) or § 9543.1(c)(3)(ii), the Court finds that the dismissal of the Defendant's Petition for DNA Testing was proper.

PCRA Op., 1/24/2007 (ECF No. 41, pp. 17-19).

In affirming the PCRA Court, the Superior Court held as follows.

We have reviewed the parties' briefs, the record, the applicable law, and the trial court opinion. We agree with the trial court that Appellant's participation in the crime was not at issue because Appellant admitted he "participated in sexual activities." Further, we agree with the trial court that DNA testing of the victim's pantyhose would not exonerate Appellant, where, as here, there is no dispute that Appellant engaged in some sexual contact with the victim. Accordingly, we affirm the order based on the trial court opinion.

Sup.Ct. Op., 12/26/2007 (internal citations omitted) (ECF No. 41, p. 24).

Plaintiff's second request for DNA testing was dismissed as time-barred by the PCRA

Court. PCRA 5/18/2011 (ECF No. 41, pp. 28-32). In affirming the PCRA Court, the Superior

Court held as follows.

Lee Wagner appeals, *pro se*, from the Allegheny County Court of Common Pleas' order, dated March 21, 2011, dismissing his fourth petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541- 9546. On January 28, 1997, a jury convicted Wagner of aggravated indecent assault and indecent assault. He argues the PCRA court erred in determining his PCRA petition was time-barred and that no exception applied. He also alleges the court improperly found his motion for DNA testing was time-barred because, he claims, there is no time-bar to such testing, and the court was mistaken as to the issue of consent in the case. Based on the following, we affirm.

\* \* \*

22

Before we may address the merits of Wagner's appeal, we must determine whether his fourth PCRA petition, the subject of this appeal was timely filed. *See* Commonwealth v. Hutchins, 760 A.2d 50, 53 (Pa. Super. 2000) ("a question of timeliness implicates the jurisdiction of [this] Court"). "It is imperative to note that the timeliness requirements of the PCRA are jurisdictional in nature. Statutory time restrictions may not be altered or disregarded to reach the merits of the claims raised in the petition." Commonwealth v. Harris, 972 A.2d 1196, 1199 (Pa. Super. 2009) (citations omitted).

Under the PCRA, a second or subsequent petition "must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition, set forth at 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii), is met." *Id.* at 1200 (footnote omitted).

> Section 9545 provides the following three exceptions that allow for review of an untimely PCRA petition: (1) petitioner's inability to raise a claim was a result of governmental interference; (2) the discovery of previously unknown facts or evidence that would have supported a claim; and (3) a newly recognized constitutional right. 42 Pa.C.S. § 9545(b)(1)(i)-(iii). To invoke an exception, the petitioner must plead it and satisfy the burden of proof. Commonwealth v. Beasley, 559 Pa. 604, 609, 741 A.2d 1258, 1261 (1999). In addition, [t]he PCRA limits the reach of the exceptions by providing that the exceptions must be pled within [60] days of the date the claim could have been presented. 42 Pa.C.S. § 9545(b)(2).

Commonwealth v. Geer, 936 A.2d 1075, 1077 (Pa. Super. 2007) (internal quotation and quotation marks omitted), *appeal denied*, 948 A.2d 803 (Pa. 2008). "[T]he 60-day rule requires a petitioner to plead and prove that the information on which he relies could not have been obtained earlier, despite the exercise of due diligence." Commonwealth v. Stokes, 959 A.2d 306, 310 (Pa. 2008) (citation omitted). Furthermore, a petitioner must establish that the claims of error raised in the PCRA petition have not been previously litigated or waived. See 42 Pa.C.S. § 9543(a)(3).

Here, the trial court re-sentenced Wagner on December 16, 1998. His judgment of sentence was affirmed on July 21, 2000. Since he did not file a petition for allowance of appeal, his judgment of sentence became final on August 21, 2000, 30 days after this Court affirmed his judgment of sentence on direct appeal. Therefore, Wagner had until August 21, 2001 to file any PCRA petition. Wagner did not file his fourth PCRA petition until January 27, 2011, making it patently untimely unless he has pled and proved one of the three exceptions to the timeliness requirement.

23

* * *

With regard to his motion for DNA testing of the victim's pantyhose, Wagner claims the one-year jurisdictional time-bar under the PCRA does not apply to motions for the performance of DNA testing pursuant to 42 Pa.C.S. § 9543.1. Moreover, he states the issue of DNA testing has never been properly addressed because in reviewing the denial of his first motion for DNA testing, the PCRA court mislabeled the incident as "consensual acts" and a panel of this Court adopted "that flawed analysis." He states the absence of DNA on the victim's pantyhose would prove that indecent contact did not occur between him and the victim and would establish his innocence.

"Initially, we note that the PCRA's one-year time bar does not apply to motions for the performance of forensic DNA testing under Section 9543.1." Commonwealth v. Brooks, 875 A.2d 1141, 1146 (Pa. Super. 2005). However, Section 9543.1:

> sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. 42 Pa.C.S.A. § 9543.1(a)(2).

Commonwealth v. Williams, 2011 Pa. Super 275, *9-10 (Pa. Super. 2011).

In its Rule 1925(a) opinion, the PCRA court found Wagner's motion was previously litigated and he had "not raised any issues that were not raised in the previous Petition before this Court or the appeal to the Superior Court." PCRA Court, 5/18/2011, at 4. The court concluded the appeal was frivolous. We agree.

* * *

Here, again, Wagner . . . presents a substantially similar claim to the one he unsuccessfully argued in his prior motion for DNA testing. Accordingly, we conclude Wagner's claim was fully litigated, as it was dismissed by the PCRA court, was further rejected by a panel of this Court, and was denied review by the Pennsylvania Supreme Court. Therefore, in the absence of any new evidence, Wagner's argument is estopped under the law of the case. Commonwealth v. Santiago, 822 A.2d 716, 723-724 (Pa. Super. 2003) (the "law of the case doctrine 'refers to a family of rules which embody the concept that a court involved in the

24

later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phase of the matter'") (citation omitted), *appeal denied*, 843 A.2d 1237 (Pa. 2004), *cert. denied*, 542 U.S. 942 (2004). Wagner failed to prove that this claim was not previously litigated and therefore, it is not cognizable under the PCRA. *See* 42 Pa.C.S. § 9543(a)(3). Accordingly, this claim is without merit.

Sup.Ct.Op., 02/09/2012 (ECF No. 41, pp. 34-44).

With regard to his as applied challenge, Plaintiff claims that the victim testified at trial that Plaintiff penetrated her vagina using two fingers by forcing them through her panty hose, making a hole in them in the crotch area. At trial, Plaintiff denied this allegation. Plaintiff claims that, if the victim's version of the facts is true, then her pantyhose will contain some trace biological samples of plaintiff's DNA at the alleged area of penetration. In support of this assertion, he cites to a 1996 treatise and claims, without any citation to any authority in support, that new DNA testing procedures for "epithelial cell" DNA testing would exonerate him by showing the lack of any DNA on the pantyhose.

In denying his claim, the state courts specifically noted that the lack of DNA evidence would not show that Plaintiff was actually innocent as required by the DNA statute. This requirement does not offend notions of procedural due process. The Court of Appeals for the Third Circuit specifically rejected such a claim in Twillie v. Foulk, 360 Fed. App'x 301 (3d Cir. 2010).

Twillie does not challenge the constitutionality of Pennsylvania's requirements for obtaining post-conviction DNA testing under 42 Pa. Cons.Stat. § 9543.1(c)(3). Rather, he contends that the state courts failed to consider, as required by the statute, whether his "participation" in the crime was at issue at trial. Assuming this argument is properly before us, it is without merit. The record reflects that, in affirming the denial of DNA testing, the Pennsylvania Superior Court stated that Twillie did not show that his identity was at issue at trial and that his defense at trial was that the victim had consented to sexual intercourse. Moreover, the Superior Court explained that Twillie did not raise

25

during trial a defense of mistaken identity "or deny the fact that he had a sexual encounter with the victim." Thus, contrary to Twillie's argument, the Superior Court did address his participation in the crime.

Twillie, 360 Fed. App'x at 304.

Like Twilie, Wagner did not show that his identity was at issue at trial. His defense at trial was that he did not rip her pantyhose and penetrate her vagina. Wagner did not raise during trial a defense of mistaken identity or deny the fact that he had a romantic encounter with the victim. Thus, he did not meet the statutory requirements for DNA testing. As stated above, when a State chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume. Osborne, 557 U.S. at 69. Moreover, procedural due process does not require that a district attorney disclose all potentially exculpatory evidence for post-conviction relief. *Id.* In order for Pennsylvania's procedures to violate due process, they must offend some principle of justice so rooted in the traditions and conscience of our people to be ranked as fundamental or they must transgress a recognized principle of fundamental fairness in operation. Medina v. California, 505 U.S. 437, 446 (1992). Pennsylvania's procedures for post-conviction DNA testing do neither. *Accord* Young v. Philadelphia County Dist. Attorney's Office, 341 Fed. App'x 843, 845-846 (3d Cir. 2009); Spuck v. Pennsylvania, 456 Fed. App'x 72, 73 (3d Cir. 2012).

Wagner contends that that opinion in Grier v. Klem, 2011 WL 4971925, 8-9 (W.D. Pa. Sept. 19, 2011) mandates a different result. I disagree. In order to understand the decision in Grier, a little background information is necessary. In Commonwealth v. Young, 873 A.2d 720 (Pa. Super. 2005), the Superior Court of Pennsylvania announced a *per se* rule that an individual was not entitled to DNA testing under Section 9543.1 where he had confessed to the crime and

26

the confession was determined to be voluntary. This *per se* rule was overturned in Commonwealth v. Wright, 609 Pa. 22, 55, 14 A.3d 798, 818 (2011) where the Supreme Court of Pennsylvania held that a confession is not a *per se* bar to a convicted individual's ability to seek DNA testing to prove his or her actual innocence. In Grier, the Court concluded that the state court's use of Grier's confession as an automatic bar to deny access to DNA testing under the now overturned Young rule was fundamentally unfair.

> Prohibiting defendants who have confessed to a crime from accessing DNA evidence after conviction violates the concept of fundamental fairness. It is not unheard of for a suspect to confess to crimes he has not committed. Indeed, studies have shown that false confessions accrued in approximately 25% of DNA exonerations in the United States.
>
> Further, the trial judge's use of Grier's confession as an absolute prohibition on access to DNA testing is fundamentally unfair given that a confession is merely another piece of evidence to be considered in resolving the ultimate issue of guilt or innocence. Jurors are permitted to attach as much or as little weight to a confession as they see fit. Therefore, the state court's use of Grier's confession—a confession he immediately and consistently repudiated—as an automatic bar to deny access to DNA testing was fundamentally unfair.

Grier v. Klem, 2011 WL 4971925, at *9 (internal citations and quotations omitted).

The facts in Grier and the facts at bar bear no similarity. Wagner was not precluded from DNA testing based on the *per se* rule announced in Young. There was nothing unfair in the state courts' determination that Wagner had not met the statutory requirements for DNA testing.

In the instant case, the pantyhose was available before Wagner's trial in 1997, DNA testing technology was available at the time of Appellant's trial in 2000, the verdict was rendered after January 1, 1995, and the court did not refuse funds for the testing. *See* 42 Pa. Cons. Stat. § 9543.1(a)(2). Thus, the state courts determined that Wagner had not met the threshold statutory requirements for DNA testing. This determination is in accordance with Pennsylvania law. *See*

27

Commonwealth v. Williams, 587 Pa. 304, 310, 899 A.2d 1060, 1063 (2006) (holding that a petitioner does not meet the requirements of § 9543.1(a)(2) if the technology existed at the time of his trial, the verdict was rendered after January 1, 1995, and the court never refused funds for the testing); Commonwealth v. Williams, 35 A.3d 44, 51 (Pa. Super. 2011) (same); Commonwealth v. Perry, 959 A.2d 932, 938 (Pa. Super. 2008) (affirming denial of request for DNA testing because technology for testing was available at time of applicant's trial, verdict was entered after January 1, 1995, and trial court did not deny funds for testing, despite applicant's indigence). Prohibiting defendants from obtaining DNA testing under the above provisions does not violate any concept of fundamental fairness.

Even assuming that new DNA testing procedures are now available, the state courts determined that Plaintiff was not entitled to relief as he failed to make a *prima facie* case of actual innocence as required by the statute. In this regard, the state courts followed the mandate in 42 Pa. Cons. Stat. § 9543.1(c)(3) to assess Wagner's request for DNA testing in light of the trial record to see if there was a reasonable possibility that the testing would produce exculpatory evidence to establish his actual innocence. In denying his request, the PCRA court observed that Plaintiff failed to make a *prima facie* showing that the DNA testing of the specific evidence, assuming exculpatory results, would establish his actual innocence because, even if the pantyhose did not test positive for Wagner's DNA, that alone would not demonstrate that he did not commit the crime. Specifically, Wagner's purported *prima facie* case of actual innocence mistakenly presumes there was no other evidence of record to tie him to the crimes. This ignores in its entirety the victim's testimony that Plaintiff penetrated her vagina with his fingers. Given the circumstances of the case and the speculative nature of Wagner's claim, DNA testing would

not establish his actual innocence, even if his DNA were completely absent from the pantyhose. *Accord* Commonwealth v. Williams, 35 A.3d 44 (Pa. Super. 2011); Commonwealth v. Smith, 889 A.2d 582 (Pa. Super. 2005) (holding that, even if DNA testing were to generate the result that appellant anticipates, absence of his DNA from the victim's fingernails, this would not establish his innocence of her murder). Prohibiting defendants from obtaining DNA testing under an actual innocence requirement does not violate any concept of fundamental fairness. Accordingly, Plaintiff has failed to show any violation of his procedural due process rights.

2.    Equal Protection

Wagner also alleges that the denial of DNA testing violated the Equal Protection Clause. The law is well settled that discriminatory enforcement of a statute or law by local officials violates the Equal Protection Clause of the Fourteenth Amendment. Cox v. Louisiana, 379 U.S. 536, 556-58 (1965). The Equal Protection Clause establishes the fundamental requirement that "the State must govern impartially." New York City Transit Auth. v. Beazer, 440 U.S. 568, 587 (1979). It directs that all persons similarly situated be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

To state a claim under the Equal Protection Clause, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Moreover, courts within the Third Circuit have required that a plaintiff plead specific instances of differential treatment to overcome a motion to dismiss. Prof'l Dog Breeders Advisory Council v. Wolff, 2010 WL 4344554 at * 7 (E.D. Pa. Nov.3, 2010); *see also* Conklin v. Warrington Twp., 304 Fed. App'x 115 (3d Cir. 2008) (litigant provided no specific

29

instances of defendant prothonotary handling any other litigant's documents differently or treating them differently otherwise); Young v. New Sewickley Twp., 160 Fed. App'x 263, 266 (3d Cir. 2005) (disgruntled police officer failed to provide any specific instances of other police officer employees being treated in a dissimilar manner).

Here, Wagner has failed to allege the existence of any similarly situated person who received DNA testing. Thus, his Equal Protection Claim fails.

3.    Access to Courts - First Amendment

Plaintiff further alleges that Defendant violated his right of access to the courts. In order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher v. Harbury, 536 U.S. 403, 415 (2002). The Court explained that the first requirement requires that a plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." Id. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation.    Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. Id. at 414.

30

Here, Plaintiff has failed to identify any non-frivolous legal action he was unable to pursue as a result of Defendant's alleged actions. Nor has he alleged a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Thus, he has failed to state a claim upon which relief may be granted with respect to his access to court's claim. *Accord* Alvarez v. Attorney General for Florida, \_\_\_ F.3d \_\_\_, 2012 WL 1579489 at \*9, (11th Cir. May 8, 2012); Cunningham v. District Attorney's Office for Escambia County; 592 F.3d 1237, 1272 (11th Cir. 2010) ("Because we have concluded that Alabama's mechanism for postconviction relief is consistent with due process under Osborne's fundamental fairness standard, it follows that it does not improperly interfere with Cunningham's right of access to the courts).

4. Cruel and Unusual Punishment - Eighth Amendment

Plaintiff also seeks to invoke liability under the Eighth Amendment, which provides as follows.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). Moreover, to show a violation of the Eighth Amendment, a plaintiff must show that: 1)

31

he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id.*, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.* In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993). The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.

It is patently clear that Plaintiff's allegations do not show a violation of his rights as protected by the Eighth Amendment's prohibition against cruel and unusual punishment. *Accord* Alvarez v. Attorney General for Florida, ___ F.3d ___, 2012 WL 1579489 at *9, (11th Cir. May 8, 2012). Accordingly, Defendant is entitled to judgment as a matter of law with respect to this claim.

## III. CONCLUSION

Based on the discussion above, it is respectfully recommended that Defendant's Motion to Dismiss (ECF No. 10) be granted and that the Complaint be dismissed without leave to amend.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(b) and (c), and the Local Rules for Magistrates, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have

32

fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

May 21, 2012

_Cynthia Reed Eddy_
Cynthia Reed Eddy
United States Magistrate Judge

Lee H. Wagner
AJ-2441
SCI Cresson
PO Box A
Cresson, PA 16699